Case 4:20-cv-03274   Document 64   Filed on 01/12/24 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
January 15, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEE CHARLES HAMILTON, *et al*, | § § § | CIVIL ACTION NO 4:20-cv-03274 |
| Plaintiffs, | § § § | |
| vs. | § § § § | JUDGE CHARLES ESKRIDGE |
| BRIAN COLLIER, *et al*, Defendants. | § § § § | |

## OPINION AND ORDER ON DISMISSAL

The claims of Plaintiff Mark Owens are dismissed. It is now established without question that his allegations are frivolous and malicious. He has also disregarded orders imposed for the orderly process of this action.

The motion for summary judgment by Defendants John Flores, Tracy Hutto, Jeffrey Richardson, Michael Britt, Auriel Burks, and Cora Sims is denied as moot. Dkt 56.

The motion by Owens for the appointment of counsel is denied. Dkt 61.

If desired, Defendants may bring a motion with respect to imposition of sanctions, as noted below.

### 1. Background

Owens is an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division, Estelle Unit. Together with Lee Charles Hamilton, Clinton Clayton, Ivery Flurry, Roger Wyatt, and Freddie Phenix, he jointly filed a civil rights complaint initiating this action in September 2020. Dkt 1.

Proceeding here *pro se* and *in forma pauperis*, they collectively presented seventeen separate claims, including

failure to provide religious diets, exposure to extreme heat, failure to sanitize meals, and failure to stop the spread of COVID-19. The complaint was stricken as noncompliant with the Federal Rules of Civil Procedure, and Plaintiffs were directed to file an amended pleading limited to one set of related circumstances. Dkt 22. Motions for voluntary dismissal by Hamilton, Clayton, Flurry, Wyatt, and Phenix were subsequently granted in April 2021. Dkts 25–29 & 33. Owens is the only remaining plaintiff in this case.

The amended complaint by Owens must be construed liberally since he proceeds *pro se*. *Taylor v Books A Million Inc*, 296 F3d 376, 378 (5th Cir 2002). Owens has been in prison since May 2009. Dkt 35 at 5. He is confined at the Estelle Unit. He sues Defendants John Flores, Tracy Hutto, and Jeffrey Richardson. They are sued not only in their individual capacities, but also in their official capacities as the Estelle Unit Food Service Major, Assistant Warden, and Senior Warden, respectively. They no longer hold those positions. A notice of substitution of parties for official capacity claims indicates that Cora Sims (as the current Food Service Major), Auriel Burks (as Assistant Warden), and Michael Britt (as the current Senior Warden) are automatically substituted as Defendants for purposes of the official-capacity claims. See Dkt 53; FRCP 25(d).

In the amended complaint and the more definite statement ordered by the Court, Owens alleges that (i) he observes the Jain faith, which prohibits consumption of meat, (ii) he designated his faith as Jainism in accordance with prison regulations in August 2014, (iii) he's allergic to peanut butter, (iv) sack lunches contained both meat and peanut butter, (v) he's a diabetic, (vi) he experienced stomach cramps, headaches, and a drop in his blood sugar level in April 2020, (vii) he was taken to the infirmary and given cheese sandwiches, which brought his sugar back up, (viii) he filed a grievance, and Defendants retaliated against him by serving him meat products, (ix) the retaliation started after he filed the grievance, (x) he filed several grievances over a three-year period, alleging that

2

his constitutional rights were violated, that Defendants treated him with cruel and unusual punishment, and that they were deliberately indifferent in denying him his religious diets, (xi) he's notified Flores many times that he isn't receiving his religious diet, (xii) Flores is retaliating against him for exercising his right through the grievance procedure, (xiii) Owens has been deprived of food for forty-eight hours during lockdown, (xiv) an Officer Armlin told Owens to eat what was given or don't eat at all, (xv) prison officials said, "Everyone is getting the same thing, you are not special," (xvi) Defendants were responsible for the welfare of all inmates on Estelle Unit, and (xvii) Flores was responsible for making sure that all inmates received their proper religious diets, and that all food was prepared in a sanitary manner in a humane environment. Dkts 31 & 35.

Owens brings claims under the Eighth Amendment, the First Amendment, the Religious Land Use and Institutionalized Persons Act of 2000, and the Equal Protection Clause of the Fourteenth Amendment. By this action, he seeks (i) a declaration that these acts and omissions violated his constitutional rights, (ii) an injunction ordering Flores to make sure that all inmates receive their religious diets, (iii) an injunction ordering Defendants not to retaliate against him for exercising his rights through the grievance procedure, (iv) compensatory damages in the amount of $50,000 against each Defendant jointly and severally, and (v) punitive damages in the amount of $50,000 against each Defendant. Dkt 31 at 1–4; Dkt 35 at 1–5.

Pending is a motion for summary judgment filed in January 2023 by Defendants John Flores, Tracy Hutto, Jeffrey Richardson, Michael Britt, Auriel Burks, and Cora Sims. Dkt 56.

2. Appointment of counsel

In putative response to the motion for summary judgment, Owens filed a motion for appointment of counsel. Dkt 61. Detail as to the timing and tactical nature of this motion is important to understanding the ultimate disposition made of this case.

Earlier in this action, a standard order was entered to advise Owens that he must file a response within thirty days to any summary judgment motion, and that failure to do so could result in dismissal for want of prosecution. Dkt 44 at 2–3; see also Dkt 60 at 2.

As that deadline approached, Owens sought a sixty-day extension in February 2023. Dkt 58; see also Dkt 56 at 21 (certificate of service on motion for summary judgment addressed to Owens at Estelle Unit). He explained that he needed time to research and respond to the "massive amount of paperwork" associated with Defendants' motion for summary judgment. Dkt 58. He further stated that he'd been hospitalized for complications relating to dialysis and wasn't sure how long he'd be there. He was allowed a generous extension on response until July 17, 2023. Dkt 60 at 2.

Owens failed to respond within the five months allowed by that deadline. Instead, he moved for the appointment of counsel on July 20, 2023—several days *after* that deadline had passed. Dkt 61. He explained that he had just returned from the hospital, and the "letter . . . from the court [h]as come up missing . . . I have no letter to answer the court with." Id at 1. Nothing is attached to verify in any way the truth of these representations.

There's no automatic right to appointment of counsel in civil rights cases. See *Baranowski v Hart*, 486 F3d 112, 126 (5th Cir 2007). A district court may appoint counsel on finding that exceptional circumstances exist. *Cupit v Jones*, 835 F2d 82, 86 (5th Cir 1987), citing *Jackson v Dallas Police Department*, 811 F2d 260, 261 (5th Cir 1986, *per curiam*). The Fifth Circuit has articulated several factors to guide this consideration, such as (i) the type and complexity of the case; (ii) whether the indigent party is capable of adequately presenting the case; (iii) whether that party is in a position to adequately investigate the case; (iv) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross-examination; and (v) whether appointed counsel would aid in the efficient

and equitable disposition of the case. *Jackson*, 811 F2d at 261–62, citing *Ulmer v Chancellor*, 691 F2d 209, 213 (5th Cir 1982).

The motion for appointment of counsel by Owens isn't well-taken. *As to the first factor,* Owens's civil rights claims don't appear to present any complexities that are unusual in prisoner actions. *As to the second and third factors,* Owens has to this point filed sufficiently clear and well-articulated pleadings, including clear answers to an order for more definite statement. See Dkt 35. *As to the fourth factor,* consideration is premature because the case hasn't been set for trial. *As to the fifth factor,* nothing indicates that appointing counsel would aid in the efficient and equitable disposition of the case.

Beyond those factors, it must be noted that a year has now elapsed since Defendants filed their motion, to which Owens still hasn't responded. Instead, his late request for appointed counsel—which was itself made after expiration of the generous extension of time previously granted for response—appears palpably tactical, made only in an attempt to stave off actual consideration of his complaint.

The motion for appointment of counsel will be denied. Dkt 61.

### 3. Potential for dismissal of claims without prejudice for want of prosecution

As just noted, Owens still hasn't responded to the pending motion for summary judgment. Were the Court to proceed to consideration of summary judgment on the merits, that failure wouldn't of itself be sufficient to grant the motion for summary judgment. *Walker v City of Houston,* 2022 WL 4227259, *8 (SD Tex), citing *Eversley v MBank Dallas,* 843 F2d 172, 174 (5th Cir 1988). Instead, the material facts established by Defendants would be assumed true as not disputed, followed by entry of summary judgment if the submitted evidence established a *prima facie* showing of the movant's entitlement to judgment. Ibid.

The concern here is different, involving the disregard by Owens of mandatory orders upon him in this action. He has twice been warned that failure to comply with response deadlines would result in dismissal of this action for want of prosecution. Dkts 44 at 2–3 & 60 at 2. To the contrary, this *pro se* litigant seeks to keep what appears to be entirely frivolous litigation going beyond typical deadlines that all other litigants must observe.

It would be one thing if such contumacious conduct impacted only his own litigation. But it doesn't. The true consideration is one of scarce judicial resources as compared to the utter inefficiency of permitting an *in forma pauperis* litigant to undertake a cost-free path of harassing conduct. Clogging up the course of justice this way cannot and will not be tolerated. See *Green v Carlson*, 649 F2d 285, 287 (5th Cir 1981): "Flagrant abuse of the judicial process can enable one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants."

Owens has disregarded warnings that failure to comply would result in dismissal of this action for want of prosecution. Dismissal without prejudice is thus warranted on that basis. But as discussed next, other and more substantial concerns instead indicate that dismissal with prejudice is appropriate on different grounds.

    4.   Dismissal of claims as frivolous and malicious

Federal courts, including this one, devote considerable time and thought to ensuring that prisoners are not, in fact, subjected to unconstitutional conduct or conditions of confinement. For example, see *Gonzales v Collier*, 610 F Supp 3d 963, 982–83 (SD Tex 2022) (granting motion for preliminary injunction under RLUIPA to require Defendants to permit presence of Plaintiff's spiritual advisor at execution); *Turner v Collier*, 2022 WL 4734828, *11 (SD Tex) (granting motion for preliminary injunction under RLUIPA to require Defendants to provide kosher meals); *Atomanczyk v Texas Department of Criminal Justice*, 2021 WL 2915030, *19 (SD Tex) (allowing RLUIPA claim to proceed with respect to access to religious meals).

6

Indeed, the duty and care devoted by federal courts to claims such as these is a fact that Owens actually preys upon through his recalcitrant conduct. For were the allegations that he so casually asserts remotely true, they would present areas of genuine concern.

Owens proceeds here *in forma pauperis*. As such, he is subject to the strictures of 28 USC § 1915. Subsection (e)(2)(B)(i) commands that the district court "shall dismiss the case at any time" upon determination that it is "frivolous or malicious." A complaint is *frivolous* if it lacks an arguable basis in law or fact. See *Denton v Hernandez*, 504 US 25, 31 (1992), quoting *Neitzke v Williams*, 490 US 319, 325 (1989); *Richardson v Spurlock*, 260 F3d 495, 498 (5th Cir 2001), citing 28 USC § 1915(e)(2). A complaint lacks *an arguable basis in fact* in this context "if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v Gilley*, 138 F3d 211, 213 (5th Cir 1998). An action is *malicious* in this context if it is one that contains only allegations that the litigant knows are false. *Horsey v Asher,* 741 F2d 209, 212 (8th Cir 1984); see also *Sloan v Thaler,* 1994 WL 652618, \*1–2 (5th Cir) (affirming district court dismissal of claims as frivolous and malicious, where claims were factually baseless).

Procedurally, a plaintiff may not merely rest on his own pleadings at the summary judgment stage. Rule 56(e) instead "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp v Catrett*, 477 US 317, 324 (1986) (quotation marks omitted); see also *National Association of Government Employees v City Public Service Board of San Antonio*, 40 F3d 698, 712–13 (5th Cir 1994). Instead, as noted above, given the failure by Owens to respond or muster any evidence, the voluminous factual record submitted by Defendants is assumed to be true. See *Walker*, 2022 WL 4227259, \*8. And those undisputed facts accomplish two purposes. First, they set straight the record

7

as to the scurrilous assertions made against these Defendants. Second, they demonstrate the frivolous and malicious nature of this litigation by Owens against them.

The summary judgment evidence submitted by Defendants includes the following:

- Affidavit of Defendant John Flores, Texas Department of Criminal Justice (TDCJ), as the Correctional Institutions Divisions (CID) Program Specialist VI of Laundry, Food Service and Supply (Dkt 56-1 at 2–4);
- Affidavit of Audrey Hawn, custodian of records for the Laundry, Food and Supply, a part of the TDCJ, with Correctional Managed Health Care Therapeutic Dietary Policy and Procedure Manual (Dkt 56-2 at 2–6);
- Affidavit of Audrey Hawn, with Section F-47.1 of the Therapeutic Diets and Food Allergies of the Correctional Managed Health Care Policy Manual (Dkt 56-3 at 2–6);
- Affidavit of C.F. Hazlewood, the custodian of records for the Religious Services Department, with TDCJ Rehabilitation & Programs Division Chaplaincy Department Manual, Chapter 3 (Dkt 56-4 at 2–6);
- Affidavit of Audrey Hawn, with portions of the Correctional Managed Health Care Therapeutic Dietary Policy and Procedure Manual (Dkt 56-5 at 2–14);
- Affidavit of Kristen Whisehunt, custodian of records for the Business and Finance Division/Commissary and Trust Fund Department of the TDCJ, with TDCJ Commissary and Trust Fund—Commissary Purchase History of Owens (Dkt 56-6 at 2–41); and
- Affidavit of Monte K. Smith D.O. with medical records for Owens (Dkt 57-1 at 2–6, 12–127).

8

These materials definitively establish that Owens has been well attended and cared for during his time of confinement at the Estelle Unit. Next following is a brief summary.

All inmates at the Estelle Unit receive at least 2,400 calories per day. Dkt 56-1 at 2. Every meal is made to ensure that they have access to their minimum daily calories, compliant with their medical, dietary, and/or religious restrictions. Id at 3. TDCJ requires that all inmates (within reason, considering food availability and fiscal constraints) must be provided access to nutritionally adequate meals that comply with their religious beliefs. Ibid. It is the inmate's personal responsibility to submit religious preferences to the Chaplain via an I-60 form. Ibid.

Typically, inmates in both the main unit and the Geriatrics Center (where Owens has resided since 2021) can choose between a regular tray, a meat-free tray, and a pork-free tray. Id at 2–3. When an inmate comes through the serving line, his ID card is scanned, and his tray is prepared accordingly to his diet presented on the computer. Id at 3. But from May 2020 to April 2021, due to the COVID-19 pandemic, inmates received sack meals in their cells, which added up to at least 2,200 calories at the end of the day. Id at 3. Sack meals were cross-checked with inmate allergy lists to ensure that inmates received their calories in ways permitted by their diets. Id at 3–4.

The Food Service department at every Texas Department of Criminal Justice unit has real-time access to inmates' food allergy and medical diet information. Id at 3; see also Dkt 57-1 at 3. Food allergies and medical diet prescriptions entered into an inmate's electronic health records are automatically reflected in the Texas Department of Criminal Justice mainframe. Ibid.

Owens has self-reported—but unconfirmed—allergies to beef, chicken, peanuts, fish, and pork. Dkt 57-1 at 3. Food Service has been aware of these allergies since they were first added to his chart. Dkt 56-1 at 3. Since that time, he has been given meat-free, peanut-free trays to accommodate his allergies. Ibid. He receives additional

9

bread, eggs, beans, vegetables, and/or cheese to make up for any calorie deficiency. Ibid. Because Food Services already ensures that Owens doesn't receive meat in his diet due to his allergies, they needn't take any action to accommodate his religious belief, which forbids the consumption of meat. Id at 4.

Owens has been prescribed a "dialysis diet" since November 2018. Dkt 57-1 at 3; see also Dkt 56-1 at 4. The dialysis diet requires meals high in protein and calories. Dkt 57-1 at 3–4; see also Dkt 56-1 at 4. Specifically, Owens received an additional sandwich during lunch and dinner in accordance with his dialysis diet. Dkt 56-1 at 4. During the COVID-19 pandemic, Food Service staff were aware of Owens's dietary needs and included extra sandwiches with his sack meals. Ibid. In addition to receiving the dialysis diet, and to boost his caloric intake, Owens has been continuously prescribed Osmolyte since October 2018. Dkt 57-1 at 4. Osmolyte is a meat-free, dairy-free, peanut-free supplement with substantial protein and carbohydrate content. Ibid. Each container of Osmolyte contains 250 calories. Ibid.

Since October 2018, nutritional assessments of Owens have all documented his body weight as above the ideal standard body weight range. Dkt 57-1 at 4. Indeed, from 2018 through 2022, his body mass index has remained in the range of overweight or obese. Ibid. Of note, the record establishes that, in addition to the prescribed diet discussed above, Owens was eating a lot of commissary food. Dkt 56-6 (record of commissary purchases); see also Dkt 57-1 at 55, 102.

Owens is routinely monitored by a dialysis dietician, who also performs regular nutritional assessments. Dkt 57-1 at 4. He claims that his complaints about eating and suffering low blood sugar are ignored. Id at 5; see also Dkt 35 at 3. To the contrary, the record establishes (i) on April 6th, Owens complained of feeling sick to his stomach with symptoms consistent with his established diagnosis of gastroesophageal reflux disease, not low blood sugar or exposure to a food allergen; (ii) on April 11th, Owens

10

complained of dizziness, but felt better after eating a sandwich, with a blood glucose test showing normal blood sugar levels and any dizziness not appearing related to exposure to a food allergen; and (iii) on April 19th, Owens apparently complained to seek treatment of low blood glucose with cheese sandwiches, but two fingerstick blood glucose tests actually showed *elevated* blood sugar levels. Dkt 57-1 at 5.

The evidentiary record establishes without dispute that, from the time he arrived at the Estelle Unit, Owens has had access to food that is compliant with his medical, dietary, and religious restrictions. Dkt 56-1 at 3. In addition, a dialysis dietician routinely monitors his nutritional status, with nothing suggesting that he has suffered any nutritional deficiency. Dkt 57-1 at 5. If any error did occur in his food service, Owens need only have informed Food Service staff directly at the service line (or via an I-60 request for sack meals), and the error would have been promptly resolved. Dkt 56-1 at 4.

In addition, and with considerable specificity, the summary judgment evidence also shows that Owens has received treatment for multiple health conditions, including:

- Anemia, unspecified, First Observed: 09/12/2017 11:26 ICD Code: D64.9 Diag Group: primary Status: Active.
- Essential (primary) hypertension (HTN), First Observed: 11/27/2010 20:51 ICD Code: I10 Diag Group: primary Status: Active.
- Hyperlipidemia, unspecified, First Observed: 06/18/2010 09:43 ICD Code: E78.5 Diag Group: primary Status: Active.
- Type 2 diabetes mellitus, First Observed: 06/18/2010 09:43 ICD Code: E11 Diag Group: primary Status: Active.
- End stage renal disease w/ hemodialysis, First Observed: 10/10/2018 13:46 ICD Code: 587 Diag Group: primary Status: Active.

- - CPAP—dependence on other enabling machines and devices, First Observed: 11/17/2021 13:25 ICD Code: Z99.89C Diag Group: primary Status: Active.
  - Abnormal finding of blood chemistry, unspecified, First Observed: 08/01/2017 16:18 ICD Code: R79.9 Diag Group: primary Status: Active.
  - Acute and subacute endocarditis, First Observed: 11/21/2022 10:55 ICD Code: I33 Diag Group: primary Status: Active.
  - Dyspnea, First Observed: 02/16/2016 17:59 ICD Code: R06.0 Diag Group: primary Status: Active.
  - Gastro-esophageal reflux disease w/o esophagitis, First Observed: 02/23/2022 11:57 ICD Code: K21.9 Diag Group: primary Status: Active.
  - Infection vascular access, First Observed: 06/08/2020 10:52 ICD Code: 996.62 Diag Group: primary Status: Active.
  - Localized swelling, mass and lump of skin and subcutaneous tissue, First Observed: 08/03/2022 11:04 ICD Code: R22 Diag Group: primary Status: Active.
  - Obesity, unspecified, First Observed: 06/18/2010 09:43 ICD Code: E66.9 Diag Group: primary Status: Active.

Dkt 57-1 at 22–23.

The motion for summary judgment by the Defendants goes to great lengths to connect this very detailed factual record to clear articulation of applicable law. Were the merits to be reached, each and every claim asserted by Owens in this action would be dismissed with prejudice for the legal reasons stated in their brief. See Dkt 56 at 11 (arguing dismissal of official-capacity claims for money damages), 11–13 (arguing dismissal of claims for injunctive relief), 13–14 (arguing dismissal of PLRA claims), 14–19

(arguing dismissal of Section 1983 claims for violation of the First, Fourteenth, and Eighth Amendments and for retaliation), 19–20 (arguing dismissal of individual-capacity claims).

Instead, it is here determined that this action is both frivolous and malicious. This is so because the summary judgment evidence, which Owens attempted in no way to dispute, unequivocally shows that the factual allegations in his complaint are clearly baseless—and worse, given the detail of the record, that Owens knows that his allegations are false.

The action will be dismissed with prejudice on that basis, with a strike assessed under 28 USC § 1915(g). But there remains the potential for follow-on consequences, as discussed next.

### 5. Potential for additional sanctions

Nothing suggests that the sanctions provided by 28 USC § 1915 are the only ones available. To the contrary, caselaw establishes that further sanctions are permissible in appropriate circumstances. See *Gensan v James*, 115 F Appx 670, 671–72 (5th Cir 2004) (affirming imposition of monetary sanctions against litigant who misled court in addition to dismissal of frivolous action and assessment of strike under Section 1915).

Rule 1 of the Federal Rules of Civil Procedure provides that the Rules "govern the procedure in all civil actions and proceedings in the United States district courts," apart from certain exceptions not applicable here. This means that Rule 11 applies in full force against Owens as a *pro se* plaintiff. And the Fifth Circuit has affirmed instances where Rule 11 sanctions were entered against *pro se* litigants. See *Mendoza v Lynaugh*, 989 F2d 191, 195 (5th Cir 1993) (collecting citations).

Section 1927 of Title 28 to the United States Code provides, "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the

court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Fifth Circuit hasn't yet determined whether the potential for such sanctions applies as against *pro se* litigants. See *Simmons v Methodist Hospitals of Dallas*, 632 F Appx 784, 787 n 5 (5th Cir 2015). A circuit split exists on this issue. Compare *Wages v Internal Revenue Service*, 915 F2d 1230, 1235–36 (9th Cir 1990), citing *Wood v Santa Barbara Chamber of Commerce Inc*, 699 F2d 48, 485–86 (9th Cir 1983) (applicable to *pro se* litigants), with *Sassower v Field*, 973 F2d 75, 80 (2d Cir 1992) (inapplicable to *pro se* litigants). And indeed, a split on this also exists among district courts within the Fifth Circuit. See *Derosa-Grund v Time Warner Inc*, 2015 WL 12806619, *2 n 2 (SD Tex); *Swiney v Texas*, 2008 WL 2713756, *3 (WD Tex), report and recommendation adopted, 2008 WL 11408741 (recognizing split without deciding); also compare *McCully v Stephenville Independent School District*, 2013 WL 6768053, *2 (ND Tex) (applicable to *pro se* litigants), with *Allen v Travis*, 2007 WL 1989592, *6 (ND Tex) (inapplicable to *pro se* litigants).

The better view is that taken by the Ninth Circuit, finding the potential for sanctions under Section 1927 to apply to *pro se* litigants. A *pro se* litigant is within the plain meaning of Section 1927, being quite literally "a person admitted to conduct" his own case in federal court. Nothing suggests that an exception does or should exist that would allow a *pro se* litigant to engage in baseless and harassing conduct that would be dealt with harshly if done by a represented party. To the contrary, as observed by the Eleventh Circuit, in a related context under the Federal Rules of Civil Procedure, "once a *pro se* IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v Newsome*, 863 F2d 835, 837 (11th Cir 1989).

Defendants may, if desired, request an order for Owens to show cause as to why he shouldn't be sanctioned under Rule 11, Section 1927, and/or any other provision of law related to the bringing and maintaining of litigation

14

unreasonably, vexatiously, and in bad faith. For instance, they may seek relief of a quantum of their attorney fees and costs, which, if imposed, would preclude Owens from bringing any other action in the Southern District of Texas until such sanction was satisfied. See 28 USC § 1915(f)(2); see also *Murphy v Collins,* 26 F3d 541, 544 (5th Cir 1994) (affirming monetary sanctions against inmate proceeding *pro se* and *in forma pauperis*); *Ganesan v James*, 115 F Appx 670, 671–72 (5th Cir 2004) (affirming monetary sanction against inmate proceeding *pro se* and *in forma pauperis* and counting inmate's complaint as "strike" under three-strikes rule of Section 1915(g)).

Any such motion must be brought within twenty-eight days of entry of this Order, absent request for more time.

  6. Conclusion

The motion by Plaintiff Mark Owens for the appointment of counsel is DENIED. Dkt 61.

The complaint is DISMISSED WITH PREJUDICE as frivolous and malicious under 28 USC § 1915(e)(2)(B)(i). Dkt 1.

This dismissal counts as a strike under 28 USC § 1915(g).

The motion by Defendants for summary judgment is DENIED AS MOOT. Dkt 56.

Any other pending motions are DENIED AS MOOT.

The Clerk of Court will send a copy of this Order to:
> Manager of the Three-Strikes List
> Southern District of Texas
> Three_Strikes@txs.uscourts.gov.

SO ORDERED.

Signed on January 12, 2024, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge